UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN ROBERTS, | ) | No. ED CV 08-01590-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.  Whether the Administrative Law Judge ("ALJ") properly

|   |    | considered the treating physician's opinion regarding Plaintiff's mental impairments and GAF of 47; |
|---|----|---|
|   | 2. | Whether the ALJ properly considered the consultative examining psychiatrist's opinion regarding Plaintiff's mental limitations and GAF of 50; |
|   | 3. | Whether the ALJ properly considered the type, dosage, effectiveness and side effects of Plaintiff's medication; and |
|   | 4. | Whether the ALJ posed a complete hypothetical question to the vocational expert. |

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT COMMIT ERROR**

**IN EVALUATING PLAINTIFF'S MENTAL IMPAIRMENTS**

In his first issue, Plaintiff asserts that the ALJ improperly depreciated the mental health disability opinion offered by his treating psychiatrist, Dr. Chasuthipian, along with a Global Assessment of Functioning ("GAF") of 47.

At Step Two, the ALJ found that among Plaintiff's severe impairments are polysubstance abuse disorder, psychotic disorder, NOS, and anti-social personality disorder. (AR 12.) At Step Three, it was found that Plaintiff's impairments, including the substance abuse

2

disorders, meet various Listings, including §§12.03, 12.08 and 12.09.[1] (AR 12-13.) The ALJ found, however, that if Plaintiff stopped his substance abuse, his remaining limitations would not meet any of the Listings. It was further found that if Plaintiff stopped his substance abuse, he would have mild restrictions in activities of daily living ("ADL"); mild to moderate difficulties with social functioning; mild difficulties with concentration, persistence or pace; and no episodes of decompensation. (AR 13.)

The ALJ further found that if Plaintiff stopped his substance use, he would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: simple, four to five step instructions in an object oriented setting involving no safety operation and no operation of hazardous machinery. (AR 14.)

The ALJ's review of the records indicated that Plaintiff was incarcerated in 2004 on a charge of drug possession, with a diagnosis of schizophrenia, paranoid, chronic and that his symptoms, primarily auditory hallucinations, were controlled with medication. (AR 14.) After his parole in early 2005, Plaintiff's GAF was 75, and then 60, although in November 2005, the ALJ noted that Plaintiff reported use of amphetamines and marijuana and also an old prescription rather than his prescribed medication. This drug use was paralleled with an increase in auditory hallucinations and paranoid ideation. (AR 15, citing AR 323.) It was further noted that when Plaintiff was seen at the San Bernardino County Department of Behavioral Health, he admitted to drug abuse as recently as October 2007 with increased auditory

---

[1] There is no Listing for 12.09.

hallucinations and paranoid delusions.  He reported decreased auditory and visual hallucinations and paranoid ideation through February of 2008, and then denied any paranoid ideation in March 2008, indicating minimal problems with hallucinations. (AR 15, citing AR 341-343.)

Summarizing this medical evidence, the ALJ found the following:

> "In terms of [Plaintiff's] alleged hallucinations and delusions, there is no reason to doubt that [Plaintiff] has problems with them when he abuses drugs and alcohol.  The medical evidence of record however shows a pattern of remission and recurrence related to abstinence from substance abuse and compliance with the prescribed treatment."

(AR 15.)

The ALJ disagreed with a consultative psychiatric examiner's finding that Plaintiff's substance abuse is secondary to an underlying psychotic disorder, for the stated reason that Plaintiff "has had good control of his symptoms when compliant with prescribed treatment with no indication he needs at that point to 'self-medicate' with alcohol and illicit drugs..." (AR 15.)  The ALJ gave greater weight to the findings of the testifying ME "that the record as a whole only establishes a psychotic disorder, not otherwise specified, secondary to the [Plaintiff's] substance abuse." (Id.)  Moreover, the ALJ did not disagree with the findings of the treating psychiatrist that Plaintiff has been permanently and totally disabled since December 2007, noting that, "This is not inconsistent with the findings herein above regarding the severity of the [Plaintiff's] impairments if his substance abuse is considered in combination with his other mental

4

impairments." (Id.)

Thus, the opinion of Plaintiff's treating psychiatrist as to disability was not a matter of disagreement for the ALJ; rather, the treating psychiatrist failed to account for the effect of substance abuse on the underlying mental health problems, although the treating psychiatrist's notes reflect that Plaintiff used methamphetamine in October 2007, and diagnosed a dependence on amphetamine and marijuana. (AR 350, 354.)

Where drug addiction or alcoholism is a contributing factor material to the determination of disability, payment of benefits is prohibited. 42 U.S.C. §423(d)(2)(C); 42 U.S.C. §1382c(a)(3)(J). The key factor in making the determination whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the Commissioner would still find the plaintiff disabled if he stopped using drugs or alcohol. 20 C.F.R. §§404.1535(b), 416.935(b). If the Commissioner finds that the plaintiff's remaining limitations, absent the drug or alcohol addiction, would not be disabling, the Commissioner will find that drug addiction or alcoholism is a contributing factor material to the determination of disability and deny benefits. 20 C.F.R. §§404.1535 (b)(2)(i), 416.935 (b)(2)(i); see also Sousa v. Callahan, 143 F. 3d 1240, 1245 (9th Cir. 1998).

Plaintiff fails to demonstrate why the ALJ was incorrect in determining that Plaintiff's substance abuse has a primary impact upon the existence of a disabling mental impairment. It is not a matter of the ALJ disregarding the opinion of the treating physician; rather, the fact is that Dr. Chasuthipian failed to account for the effect of Plaintiff's substance abuse on his mental impairment, simply finding

that the mental impairment itself was disabling. Under Social Security law, however, it is the Commissioner's responsibility to determine whether, absent the drug or alcohol addiction, the mental impairment would be disabling. For that reason, the Court finds no error with regard to Issue One.

With regard to Plaintiff's argument regarding the ALJ's failure to account for Plaintiff's GAF score, the GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

For the foregoing reasons, there is no error with regard to the issue of Plaintiff's GAF score.

## II

### THE ALJ PROPERLY CONSIDERED THE CONSULTATIVE EXAMINING PSYCHIATRIST'S OPINION

In Plaintiff's second issue, he asserts that the ALJ did not correctly evaluate the psychiatric consultative evaluation ("CE") opinion of Dr. Kikani.

6

Dr. Kikani examined Plaintiff on January 17, 2008.[2] Dr. Kikani diagnosed Plaintiff as suffering from schizophrenia, paranoid type, and indicated he has been psychiatrically ill since about 1996. (AR 338.) Dr. Kikani assessed a GAF score of 50. Further, he diagnosed Plaintiff as having a history of polysubstance abuse secondary to the underlying psychotic disorder. (AR 338.) This conclusion was rejected in whole by the ALJ, who found that it was not supported by evidence of record "since the [Plaintiff] has had good control of his symptoms when compliant with prescribed treatment ..." (AR 15.)

Finally, Plaintiff asserts that the ALJ failed to take note of the fact that Plaintiff suffers from serious side effects, such as day-time sedation, from the prescribed medications. (JS at 10, citing AR 321, 323, 324.)

The Court has already discussed the lack of relevance of GAF scores in the disability analysis, in its denial of relief as to Plaintiff's first issue, and that discussion need not be repeated.

With regard to side effects of psychotropic medications, while Plaintiff cites several instances where he reported day-time sedation from his psychotropic medication, he fails to recognize that concurrent mental status examinations indicated no abnormalities. For example, Plaintiff cites the report of December 7, 2005, for the point that he suffers from day-time sedation. Yet, on that same date, his mental status examination indicated alertness, full orientation, clear, goal-directed thinking, clear, fluent, spontaneous and not pressured speech, full and appropriate affect, good cooperation,

---

[2] The reference is not made clear in the report, although Dr. Kikani indicates that he obtained information both from Plaintiff and from DPSS records.

intact cognition and memory, good insight, fair judgment, and a denial of delusions. (Id.)  The same is true of the other reports cited by Plaintiff for this point. (See AR at 323-324.)  Moreover, on many occasions, Plaintiff denied the existence of any side effects from medication.  These reports were documented in June 2005, at which time Plaintiff wanted to actually increase his Seroquel dosage (AR 326); November 2, 2005 (AR 323); December 5, 2005 (AR 320-321).  Further, on April 1, 2006, Plaintiff alleged hunger as a side effect of his psychotropic medications. (AR 316.)  Thus, the medical reports are at best inconclusive, and as such, the ALJ appropriately performed his function to resolve conflicting evidence.  See Morgan v. Commissioner, 169 F.3d 595, 601 (9th Cir. 1999).

Finally, with regard to the asserted secondary nature of the polysubstance abuse to the psychotic disorder, the ALJ appropriately resolved that question by discounting the CE's opinion, much as he had discounted the treating psychiatrist's opinion. (See discussion, infra, Issue One.)

Plaintiff again raises the medication side effects issue in his third issue, which the Court has already resolved in connection with his second issue.  Thus, no further discussion is necessary with regard to Plaintiff's third issue.

Finally, Plaintiff's fourth issue concerns the assertedly incomplete hypothetical question posed to the vocational expert ("VE").  Specifically, Plaintiff contends that the hypothetical question was insufficient because it failed to set forth Plaintiff's mental limitations (Issues One and Two), and side effects of psychotropic medications (Issue Three).

A hypothetical question posed to a VE must only contain those

medical assumptions which are supported by substantial evidence in the record reflecting Plaintiff's limitations. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-64 (9th Cir. 2001). Since this Court has sustained the ALJ's analysis of the issues regarding Plaintiff's treating psychiatrist, the CE, and side effects of medication, it follows that no error will be found with regard to omission of these matters in the hypothetical questions posed to the VE.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: August 12, 2009                    /s/
                                     VICTOR B. KENTON
                                     UNITED STATES MAGISTRATE JUDGE